IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: <br><br> JUAN ANGEL NIEVES QUIÑONES <br> YAMIR GARCIA SEGARRA <br><br> DEBTORS <br> _____ <br><br> JUAN ANGEL NIEVES QUIÑONES <br> YAMIR GARCIA SEGARRA <br><br> PLAINTIFFS <br><br> V. <br><br> BANCO POPULAR DE PUERTO RICO <br> WIGBERTO LUGO MENDER, TRUSTEE <br><br> DEFENDANT(S) | CASE NO. 18-05445 BKT <br><br> CHAPTER 7 <br><br> ADV. PROC. NO. 18-00138 BKT |

**PLAINTIFFS' MOTION FOR RECONSIDERATION OF *JUDGMENT*
DOCKET NO. 28**

TO THE HONORABLE COURT:

COME NOW, **JUAN ANGEL NIEVES QUIÑONES and YAMIR GARCIA SEGARRA,** the Plaintiffs/Debtors in the above captioned case, through their undersigned attorney, very respectfully state and pray as follows:

**I. Introduction**

1. On October 02, 2019, the Court entered an *Opinion and Order*, Docket No. 27 and a *Judgment*, Docket No. 28, whereby Banco Popular de Puerto Rico's (BPPR's) *Motion for Summary Judgment*, Docket No. 18, was granted, in the above captioned adversary proceeding.

2

2. Plaintiffs are hereby very respectfully submitting their *Motion for Reconsideration of Judgment Docket No. 28*.

**II. The *Opinion and Order and Judgment*, Docket No.'s 27 and 28**

3. On October 02, 2019 the Court entered an *Opinion and Order*, Docket No. 27 and a *Judgment*, Docket No. 28, whereby the Court held that the Defendant BPPR holds a secured claim since "…the mortgage deed at the center of this dispute is still pending Recordation, and there exists no notification of defect…", thus, granting Defendant BPPR's *Motion for Summary Judgment; Statement of Uncontested Facts and Memorandum of Law* [Dkt. No.'s 18 & 19]. *Judgment*, Docket No. 28.

4. In its *Opinion and Order*, Docket No. 27, the Court stated that "[I]t is the Plaintiffs' contention that the mortgage note has not been recorded by the Registry due to certain defects. [T]he lot which serves as collateral for the mortgage loan has not been duly segregated, and so therefore, does not exist as a separate property which can serve as collateral for purposes of a mortgage lien." *Opinion and Order*, at page 2, Docket No. 27.

5. The Court also states that Plaintiffs' argument is supported by "…an unsworn declaration under penalty of perjury dated July 29, 2019, from a title investigator, Mr. Angel Urbina, …", who concludes that "…BPPR's mortgage lien cannot be registered due to a defect in the segregation of the lot from the larger parcel of land. [A]s such, BPPR's mortgage lien cannot be perfected and should be cancelled and/or annulled. [B]PPR's claim must be classified as a general unsecured claim in the related legal case given that recordation at the Registry is essential to the validity of a mortgage." *Opinion and Order*, at pages 2 & 3, Docket No. 27.

3

6. The Court states the Defendant's position as follows: "[I]n turn, BPPR alleges that the mortgage lien was duly presented at the Registry pre-petition and is pending recordation …" and that from a search result from the Karibe System website the date of the presentation of the note is corroborated, and the "…fact that the same has not been qualified, graded nor notified of any defects by the Registry. [I]n addition, a title study dated July 19, 2018, in relevant part shows the presentation date of the mortgage over the property with no notified defects." *Opinion and Order*, at page 3, Docket No. 27.

7. The Court then concludes that the Plaintiffs/Debtors did not meet their burden of proof on the particular issue concerning the defects that prevent recordation of BPPR's mortgage deed, and since it is undisputed that the mortgage deed was presented (filed) pre-petition (December 11, 2008) and the same has not been qualified, graded nor notified of any defects by the Registry, the mortgage deed is still pending recordation. *Opinion and Order*, at page 7, Docket No. 27.

8. "Once that recordation is completed by the Registry, the effective date of the lien will be the presentation date of December 11, 2008, thus making the debt secured. [I]n the event a defect is notified by the Registry in the future, BPPR would still have whatever recourse is permitted by Puerto Rico law to correct said deficiencies before the Registry would eliminate the entry as a result of the time period to address those matters having elapsed." *Opinion and Order*, at page 7, Docket No. 27.

**III. Argument in support of Plaintiff's request for reconsideration**

    **A. The Motion for Reconsideration**

9. Rule 9023 of the Federal Rules of Bankruptcy Procedure incorporates Rule 59 of the Federal Rules of Civil Procedure to "cases under the Code" and states, in pertinent part,

4

as follows:

> **Rule 9023. New Trials; Amendment of Judgments**
>
> Except as provided in this rule and Rule 3008, Rule 59 F. R. Civ. P. applies in cases under the Code. A motion for a new trial or to alter or amend a judgment shall be filed, and a court may on its own order a new trial, no later than 14 days after entry of judgment". Rule 9023 F. R. B. P.

10. F. R. Civ. P. 59 (e) states as follows:

> **(e) Motion to Alter or Amend a Judgment**
>
> A motion to alter or amend a judgment must be filed no later than 28 days after the entry of a judgment.

11. Rule 9024 of the Federal Rules of Bankruptcy Procedure incorporates Rule 60 of the Federal Rules of Civil Procedure to "cases under the Code" and states, in pertinent part, as follows:

> "**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.**
> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; . . . ; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. . . . ." Rule 60(b) of the Federal Rules of Civil Procedure.

12. When reconsideration is sought from a true judgment or other final order, such a motion will be treated either as one under Rule 59(e) or as one under Rule 60(b), a classification typically dependent on the date the motion is filed. Baicker-McKee, Janssen, Corr, *Federal Civil Rules Handbook*, West, at page 1202.

5

13. The Plaintiffs hereby respectfully submit to the Court the reasons why they disagree with the Court's analysis and *Judgment*, Docket No. 28.

14. In essence, the Plaintiffs respectfully disagree with the Court's holding that there is a valid legal presumption that BPPR will eventually register its mortgage deed, making it a secured creditor in the Plaintiffs' bankruptcy case, which conclusion, made through summary judgment, denies the Plaintiffs/Debtors their right to a due process.

15. The unsworn declaration executed by Mr. Angel Urbina, title investigator, reflects the results of Mr. Urbina's Registry investigation concerning lot 382 which serves as BPPR's collateral.

16. In holding that Mr. Urbina's declaration is based on a "personal observation as to why the lot has not been segregated", that the same "does not constitute competent evidence in the eyes of this court", thus, concluding that the Plaintiffs did not meet their burden of proof to "thwart summary judgment by identifying competent evidence in the record…" did not allow the Plaintiffs to further evidence the facts surrounding BPPR's Registry presentation of its mortgage deed.

**B. The Summary Judgment Standard**

17. "Summary judgment may be granted only if there are no genuine issues of material fact and one party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A dispute over a material fact cannot be 'genuine' unless a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In reviewing the district court's decision to grant summary judgment, we view all facts and the inferences drawn therefrom in the light most favorable for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

6

U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)." *Cockrel v. Shelby County School District, Et Al.*, 270 F. 3d. 1036, 1048 (6th Cir. 2001).

18. Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

19. The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. <u>Adickes v. Kress & Co.</u>, 398 U.S. 144, 157 (1970).

20. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. <u>Over the Road Drivers, Inc. v. Transport Insurance Co.</u>, 637 F.2d 816, 818 (1st Cir. 1980).

21. The unsworn declaration executed by Mr. Urbina shows the situation surrounding lot 382 at the Registry, specifically that there are certain missing complimentary documents that which do not allow the Registry to segregate lot 382.

22. The Plaintiffs respectfully understand that if the fact that the Registry's refusal to qualify the pending documents is due to the Registry's legal impediment to segregate lot 382, and this is established at trial, this could lead to a finding for the nonmoving party, that is, to the Plaintiffs, in the present case.

23. Therefore, the Court erred in granting BPPR's motion for summary judgment since BPPR as the moving party, did not establish why the mere presentation of its mortgage deed since December 11, 2008, is sufficient to presume that the same will be

ultimately recorded. See: *Adickes v. Kress & Co.*, 398 U.S. 144, 157 (1970).

### **C. The Presumptive Future Recordation**

24. In addition, the Plaintiffs respectfully disagree with the Court's conclusion that BPPR holds a valid presentation at the Property Registry of its mortgage deed.

25. Plaintiffs respectfully argue that in order for the Court to conclude that BPPR has a valid presentation and that its mortgage deed will eventually be recorded, the Court must look into the facts surrounding the Registry's refusal, since December 11, 2008, to record said mortgage deed.

26. It is an undisputed fact that almost eleven years after its presentation, December 11, 2008, the Registry has not recorded BPPR's mortgage deed.

27. That fact that BPPR knew, or should have known that its mortgage deed lacks recordation, and the fact that BPPR has been unable to cause the Registry to duly record its mortgage deed, tends to demonstrate that the Registry is legally estopped to record the segregation deed and BPPR's mortgage deed.

28. On October 15, 2019, and prior to the filing of the present motion for reconsideration, a new/updated Title Study was procured by Plaintiffs and executed by Luz Castro Colon, a Title Investigator, concerning lot 382. The same reflects that as of October 15, 2019, there are no changes at the Registry for lot 382.

29. On October 23, 2008, Plaintiffs purchased a real property (house and lot) for residential purposes ("lot 382") located at Borinquen Valley II Development, Caguas, Puerto Rico.

30. As of the date the Plaintiffs purchased lot 382, Borinquen Valley Phase II had been selling other lots in this development. It appears that these other lots were segregated

and their purchase deeds and mortgage deeds were recorded at the Property Registry.

31. Plaintiffs' lot 382 is located at Capuchino Street, where the last housing units of this development were sold by Borinquen Valley S.E. and Jenvel Corporation, developers/owners of said housing project.

32. Construction of several houses at Capuchino Street was never completed by the developer(s) and their shells still stand as a reminder to Plaintiffs of the adverse situation suffered by them [the Plaintiffs] and resulting from the developers' abandonment of this housing project.

33. Most important, it is undisputed that the Borinquen Valley II developers/owners abandoned the project without completing/executing/procuring all the necessary documents which are necessary to allow the Registry to segregate the Plaintiffs' lot 382.

34. It is to be noted that the original Bank that granted the financing for the purchase of lot 382, R&G Premier Bank, was closed by the F.D.I.C., as a failed bank. It is undisputed that Defendant BPPR is the successor in interest to R&G Premier Bank by endorsement.

35. Since December 11, 2008, the Registry has refused to qualify, grade nor notify of any defects concerning the segregation and purchase deed and BPPR's mortgage deed for lot 382.

36. The Registry's omission, or its neglect to perform what the law requires, is to be interpreted as a refusal by the Registry to give these documents their legal value.

37. In the Puerto Rico Supreme Court case of *Ponce Federal Savings v. Registrador*, 105 D.P.R. 386, 488, (1976), the Court held that a court may intervene when a registrar refuses absolutely or provisionally to record or to give its full legal effect to any document. *Ponce Federal Savings*, *supra*., at page 488.

9

38. Therefore, the Plaintiffs respectfully argue that the Court erred in holding that BPPR is a secured creditor based on a legal presumption that BPPR's mortgage deed will eventually be recorded, on the grounds that the same was presented/filed and the Registry has not qualified, graded nor notified of any defects in these documents.

39. A "presumption of law" is defined as "[A] rule of law that courts and judges shall draw a particular inference from a particular fact, or from particular evidence, unless and until the truth of such inference is disproved." Black's Law Dictionary, at page 1349, 4th Ed.

40. In summary, the *Judgment*, Docket No. 28, issued by the Court rests on a legal presumption that BPPR's deed, presented/filed since December 11, 2008, will eventually be recorded, thus, BPPR holds a "secured claim" for purposes of the Plaintiffs' bankruptcy case.

41. The Plaintiffs respectfully argue that the aforestated "legal presumption" may be proven incorrect should the Court consider all the facts surrounding the Registry's refusal to segregate lot 382 and register BPPR's mortgage deed.

### **D. The dubious title and the defective mortgage**

42. On October 23, 2008, the Plaintiffs/Debtors ("Purchasers") and Borinquen Valley S.E. and Jenvel Corporation ("Seller"), executed a *Segregation and Sales Deed* (entitled in the Spanish language: *Escritura de Segregación, Libereación y Compraventa*) Number 34, before Notary Public Public Michelle Colberg Irizarry.

43. On that same date, October 23, 2008, Plaintiffs also executed a *Mortgage Note* (*"Pagare Hipotecario"*) in the sum of $142,123.00 in favor of RG Premier Bank.

10

44. The aforementioned $142,123.00 mortgage note was to be guaranteed with a *First Mortgage* Deed Number 35 entitled in the Spanish language *Hipoteca*, executed on October 23, 2008, before Notary Public Michelle Colberg Irizarry.

45. As previously stated, on December 11, 2008, the aforementioned *First Mortgage* Deed Number 35 was filed ("*presentada*") at the Puerto Rico Property Registry, Caguas Section, at *asiento* 1449 *diario* 1144.

46. As of the date of the purchase of lot 382, October 23, 2008, the Sellers, Borinquen Valley S.E. and Jenvel Corporation, knew that the Registry lacked the complimentary documents needed to segregate the pending lots in Borinquen Valley II development. The Sellers knew or should have known that the Registry would be unable to segregate lot 382 and register the same under the name of its purchasers [the Plaintiffs].

47. Therefore, the Seller knowingly transferred, and the Plaintiffs acquired, a "dubious" or "imperfect" title to lot 382.

48. R&G Premier Bank, the original financing bank, knew, or should have known, that it was presumably obtaining a collateral, lot 382, attached to a "dubious" or "imperfect" title.

49. The undisputed factual situation surrounding lot 382 is that the same, since October 23, 2008, is part of the Seller's real property *Finca* Number 52,592, thus, it is reasonable to conclude that the Plaintiffs purchased a participation in a "community property". *Preciosas V. del Lago v. Registrador*, 110 D.P.R. 803 (1981).

50. The Plaintiffs' title to lot 382 is, at least, "imperfect" or "dubious" since the same did not transfer lot 382 to the Plaintiffs, instead, they have been and actually are, participating in a "community property", owned by the Sellers, and Plaintiffs. *Preciosas V.*

*del Lago v. Registrador*, 110 D.P.R. 803, 812 (1981).

51. In the case of *Preciosas V. Del Lago*, *supra.*, the Supreme Court of Puerto Rico stated as follows:

> "… the deed that pretends to be registered is a fiction or subterfuge to obtain Registry protection for the seller's mortgage credit, in exchange for a dubious/dark title that he [the seller] transfers to its purchasers". *Preciosas V. del Lago v. Registrador*, 110 D.P.R. 803, 812 (1981) (Our translation).

52. Since the Sellers knew that lot 382 could not and was not, going to be segregated, and that they [the Sellers] were only selling an interest in a community property, specifically, that Plaintiffs would not have a perfected or registered title to lot 382, it is reasonable to conclude that as a result of this transaction, the purchase deed number 34, dated October 23, 2008, appears to be null and void. *See*: Article 1213 of the Civil Code of Puerto Rico, 31 L.P.R.A. Section 3391, Articles 1227, 1228 of the Civil Code of Puerto Rico, 31 L.P.R.A. Sections 3432, 3433; *Rosario Rosado v. Pagan Santiago*, 196 D.P.R. 180 (1996), *Preciosas V. del Lago v. Registrador*, 110 D.P.R. 803 (1981); *Whittenberg v. Iglesia Catolica*, 182 D.P.R. 937 (2011); *Martinez Marrero v. Gonzalez Droz*, 180 D.P.R. 579 (2011); *Diaz v. Aponte*, 125 D.P.R. 1 (1989).

### **E. The "core" issue before the Court**

53. The issue of whether or not a creditor holds a "secured claim" is a core proceeding before the Court.

54. Under Section 157 (b)(1) and (2), 28 U.S.C. Section 157(b)(1) and (2) a bankruptcy judge "…may hear and determine all cases under title 11 and all core proceedings arising under title 11…" and "[C]ore proceedings include, but are not limited to- …(K) determinations of the validity, extent or priority of liens." 28 U.S.C. Section 157(b)(1)

12

and (2).

55. The Bankruptcy Code defines the term "security interest" as meaning "lien created by an agreement". 11 U.S.C. Section 101(51).

56. Rule 3001(d) of the F. R. Bankr. P., states that "[I]f a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected". Rule 3001(d) FRBP.

57. A proceeding to determine whether or not a creditor has a "security interest" in property of the estate is a fundamental function of the bankruptcy court. See: *In re Goodman*, 991 F. 2d 613 (1991).

58. In its *Opinion and Order*, Docket No. 27, the Court ruled that "[I]n the event a defect is notified by the Registry in the future, BPPR would still have whatever recourse is permitted by Puerto Rico law to correct said deficiencies before the Registry would eliminate the entry as a result of the time period to address those matter having elapsed." *Opinion and Order*, at page 7, Docket No. 27.

59. The Plaintiffs respectfully disagree with the Court's analysis and conclusion in that the matter before the Court, whether or not BPPR has a perfected security interest in lot 382, which is a "core proceeding" in nature before the bankruptcy Court, should be fully decided on its merits in this case. The Court's Judgment should not be grounded on a "presumption", clinging on a future condition that may or not occur.

**IV. Conclusion and prayer for relief**

60. The Plaintiffs respectfully incorporate and make reference to all allegations and arguments contained in their *Reply to Summary Judgment,* Docket No. 24, in the above captioned adversary proceeding.

13

61. This case presents before the Court a unique situation, which merits that the Court further entertain this matter, reconsider its conclusion grounded on a "legal presumption" which clings on a future and uncertain event, and resolve on its merits the "core" issue before the Court: whether or not BPPR's claim is a secured or an unsecured claim.

**WHEREFORE**, Plaintiffs Juan Angel Nieves Quiñones and Yamir Garcia Segarra respectfully request this Honorable Court to grant the present reconsideration and deny Defendant BPPR's *Motion for Summary Judgment*, Docket No. 18, in the above captioned adversary proceeding.

## NOTICE

**You are notified that within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the Clerk's office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the Court, the interest of justice requires otherwise.**

**I CERTIFY** that on this same date a copy of this motion was filed with the Clerk of the Court using the CM/ECF filing system which will send notice of same to: the Chapter 7 Trustee, Wigberto Lugo Mender, Esq., Jose F. Cardona Jimenez, Esq., *Cardona-Jimenez*

14

*Law Office PSC*, Counsel for Defendant Banco Popular de Puerto Rico; I also certify that a copy of this motion was sent via US Mail to the Plaintiffs: Juan Angel Nieves Quiñones and Yamir Garcia Segarra, Villa Guadalupe AA 4 18th Street Caguas PR 00725.

**RESPECTFULLY SUBMITTED.** In San Juan, Puerto Rico, this 15th day of October, 2019.

*/s/Roberto Figueroa Carrasquillo*
**USDC # 203614**
**RFIGUEROA CARRASQUILLO LAW OFFICE PSC**
**ATTORNEY FOR the PLAINTIFFS/DEBTORS**
**PO BOX 186 CAGUAS PR 00726**
**TEL. 787-744-7699; 787-963-7699 FAX 787-746-5294**
**EMAIL: rfc@rfigueroalaw.com**